In re Jack B. KING and Paula H. King, Debtors.

FRANCHISE TAX BOARD OF the STATE OF CALIFORNIA, Appellant,

v.

Jack B. KING and Paula H. King, Appellees.

BAP No. CC–90–1442–VJO.

Bankruptcy No. SA–88–05435–JB.

Adv. No. SA–89–0616–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 14, 1990.

Decided Jan. 15, 1991.

Bonnie McMickle, Los Angeles, Cal., for appellant Franchise Tax Bd. of California.

Richard Moneymaker, Los Angeles, Cal., for appellees Jack & Paula King.

Before VOLINN, JONES, and OLLASON, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

Appellant Franchise Tax Board of the State of California ("Board") appeals the trial court's decision discharging the tax liability of debtors Jack B. King and Paula H. King ("debtors") for tax years 1978–1981. Both sides agree that the appeal

turns on the definition of the term "assessed" in Bankruptcy Code § 507(a)(7)(A)(ii).

We reverse.

## FACTS AND PROCEEDINGS BELOW

The facts are undisputed. From March 17, 1981 to July 27, 1984, the Internal Revenue Service issued a series of notices of tax deficiency to the debtors for tax years 1977, 1978, 1979, 1980 and 1981. The debtors protested the IRS's determination for tax year 1977, but did not contest the other IRS notices. Their protest of the 1977 tax year determination was ultimately denied by the U.S. Tax Court on July 26, 1985. The total amount due in taxes for these five tax years totalled $102,000.

The debtors did not report these tax deficiencies to the Board within ninety (90) days after the final determination by the IRS, as required under the California Revenue and Tax Code ("Tax Code"). In a letter dated October 30, 1987, the debtors did finally report to the Board these changes in their tax liability and enclosed copies of the IRS notices. The Board reviewed the debtors' state tax returns for each of the tax years involved except for 1977. (Apparently, the Board could not initially find a copy of the 1977 return.) On December 27, 1987, the Board issued to debtors four Notices of Proposed Additional Tax (hereinafter sometimes referred to as "N.P.A.T.") for tax years 1978 through 1981. The debtors did not contest the tax liability contained in those notices. Under the Tax Code, the taxes became final 60 days after the date of the notices, or on February 22, 1988.

On or about September 15, 1988, Jack King and his tax consultant, Joseph Smith, met with a supervisor at the Board's Santa Ana's office and requested a copy of King's tax "transcript." Smith advised the supervisor that King was planning to file a personal bankruptcy and was prepared to wait as long as necessary to insure the dischargeability of his tax debt. After telephoning the Board's Sacramento office, the supervisor informed Smith of the outstanding tax liabilities for tax years 1978 through 1981. He also stated that these taxes had been assessed on January 4, 1988. Relying on this information, King and his wife filed their Chapter 7 bankruptcy petition on September 12, 1988.

The debtors were discharged from bankruptcy on January 30, 1989. Subsequently, they became aware that the Board had attempted to collect on the tax debt referred to above. Debtors filed the instant adversary proceeding against the Board on June 9, 1989 seeking an order declaring that their pre-petition tax debts had been discharged and finding, *inter alia* the Board's collection efforts in violation of their discharge under Bankruptcy Code § 524.

A trial on the matter was held on March 20, 1990, after which the bankruptcy court issued its Findings of Fact and Conclusions of Law, dated April 23, 1990. The court held that the debtors had been discharged of any tax liability for tax years 1978 through 1981. The liability for tax year 1977 was found not dischargeable.

## ISSUE

The sole question in this appeal is to determine the point in time at which Board "assessed" the additional income taxes against the debtors. This issue requires an interpretation of the term "assessed" in Bankruptcy Code § 507(a)(7)(A)(ii).

## STANDARD OF REVIEW

■ Since an interpretation of a statute is involved here, we apply a *de novo* standard of review. *Trustees of the Amalgamated Ins. Fund v. Geltman Industries, Inc.,* 784 F.2d 926, 929 (9th Cir.1986).

## DISCUSSION

Bankruptcy Code § 523(a)(1) provides that certain tax claims are not dischargeable in bankruptcy. Under sub-part (A), taxes "of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed" are specifically ex-

cluded from discharge.[1] Section 507 sets forth the priorities for various categories of expenses and claims. Section 507(a)(7)(A) lists three types of tax claims afforded priority status, of which only subpart (ii) is pertinent to this case:

[a tax] assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;

▬ Read together, these two sections (§§ 523(a)(1) and 507(a)(7)(A)(ii)) provide that taxes assessed more than 240 days, or about eight months, prior to the filing of a petition are not only deprived of priority status but are dischargeable as well. Thus, the question here is whether the Board's additional taxes for the four tax years from 1978 through 1981 were "assessed" more than 240 days prior to the filing of debtors' petition of September 12, 1988. Appellant argues that the taxes were assessed on the date they became "final," or on February 22, 1988, which date falls within the 240 day period. Appellees contend that the assessment occurred more than 240 days before the bankruptcy filing on December 27, 1987 (when the four tax deficiency notices were issued).

The Bankruptcy Code itself contains no definition of the term "assessed." Black's Law Dictionary (5th Ed.1979) defines the word in several different ways: "[t]o ascertain; to fix the value of ... [t]o impose a pecuniary payment upon persons or property.... [t]o tax." The word "assessed" is defined as the "equivalent to 'imposed'." Under the term "assessment," the Dictionary gives numerous alternatives including: "[t]he process whereby the Internal Revenue Service imposes an additional tax liability." Also, it has been held that an assessment is "a formal, discrete act with specific legal consequences." *In re Heritage Village Church and Missionary Fellowship*, 87 B.R. 401, 403 (D.S.C.), *aff'd*, 851 F.2d 104 (4th Cir.1988).

The United States Supreme Court has commented that there are two types of assessments:

The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. *Or it may include the calculation and fix the amount payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives.*

*Bull v. United States*, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (emphasis added). Thus, it appears that "to assess" refers to a formal act of fixing of tax liability, and that this act comes after the calculation is completed but may be before the amount is due and payable.

▬ The determination of the precise date of assessment should be accomplished by reference to the specific tax code and practices involved. *See In re Hartman*, 110 B.R. 951, 956 (D.Kan.1990) ("Recognizing the difficulty of defining 'assessment' so as to encompass all possible tax procedures of federal, state and local governmental units, Congress employed a common term of tax lexicon and left its particular meaning to depend upon the particular tax procedures.") In the case of federal income taxes, the actual date of the assessment is governed by the Internal Revenue Code and Department of Treasury Regulations. I.R.C. § 6203 provides that the "assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." The regulations provide that the assessment is made "by an assessment officer signing the summary record of assessment" and that "[t]he date of the assessment is the date the summary record is signed by an assessment officer." 26 C.F.R. § 301.6203–1. The federal tax lien becomes effective upon the date of the assessment's recordation. 26 U.S.C. § 6322.

1. Section 507(a)(2) is inapplicable in the present case since it refers to unsecured claims which accrue during the "gap" period in involuntary cases.

However, this entry on the assessment rolls generally does not occur until after a notice of deficiency is issued and the taxpayer is given an opportunity to seek Tax Court review. *Matter of Carlson*, 580 F.2d 1365, 1368 (10th Cir.1978).

In contrast, the California Tax Code and its accompanying regulations do not refer to the formal act of assessment recordation. In addition, the Tax Code is ambiguous as to whether the additional tax is actually "assessed" before or after the issuance of the N.P.A.T. The majority of the Code's provisions refer to an additional tax which is *proposed* to be *assessed* at some point *after* the issuance of the notice of tax deficiency. Tax Code §§ 18583, 18584, 18586, and 18590. For example, § 18583 states that the Board shall be responsible for mailing "notices to the taxpayer of the deficiency *proposed to be assessed*," and § 18584 explains that each notice must set forth the "reasons for the *proposed additional assessment* and the computation thereof." Emphasis added. However, § 18591, by using the word in its past tense, suggests that the tax deficiency is "assessed" as of the date of the initial notice: "[i]f no protest [to the notice] is filed, the amount of the *deficiency assessed* becomes final upon the expiration of the 60–day period." Emphasis added.[2]

Appellant's argument is straightforward: its N.P.A.T. does not fix the date of the assessment because at the time the notice is issued the additional tax is only "proposed," and that the tax is assessed when it becomes final. In other words, its proposed additional tax only becomes an "assessment" on the date it becomes "final,"

and in cases where no protest is filed this occurs 60 days after the notice is issued.

The Board relies exclusively upon *In re Hartman*, 110 B.R. 951 (D.Kan.1990), where the district court found that an IRS tax deficiency was "assessed" months after the initial notice of tax deficiency. The court relied upon the fact that under the Internal Revenue Code, an assessment gives rise to an immediate tax lien and the right of the government to levy upon the taxpayer's property. *See* 26 U.S.C. §§ 6322 & 6331(a). The court stated that an assessment is therefore "something more than fixing or determining ... an amount due," and that it is akin to a levy on property. *Id.* at 955. The court supported this conclusion by examining the use of the word "assess" in another section of the Bankruptcy Code, § 362(a)(6), under which "any act to collect, assess, or recover a claim against the debtor ..." violates the automatic stay. Applying the familiar principle of statutory construction that words grouped together must be related in meaning, *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 8, 105 S.Ct. 2458, 2462, 86 L.Ed.2d 1 (1985), it found that "assess" must be similar in meaning to "collect" and "recover," and that the term necessarily implies an imposition of liability.

Because *Hartman* involves the federal income tax scheme, its analysis is not particularly helpful. Unlike the Internal Revenue Code, the California statute does not establish a procedure for making entries on the assessment rolls,[3] nor does it state that

---

**2.** Debtors rely heavily on this section of the Tax Code (§ 18591), but makes no reference to the other contradictory portions of the statute.

Debtors also argue that the case of *In re Schumacher*, 61 B.R. 396 (Bankr.W.D.Wisc. 1986) supports their position in this case. However, that case does not help either party here because it involves a different type of tax deficiency. In *Schumacher*, the debtors filed an amended tax return but neglected to enclose payment for their tax liability. The state issued a notice demanding payment, based solely on the calculations contained in the return, and the court held that this notice constituted the "assessment" pursuant to Code §§ 523(a)(1)(A) and

507(a)(7)(A)(ii). Since tax returns are considered "self-assessments," *Matter of Carlson*, 580 F.2d 1365, 1368 (9th Cir.1978), the holding in *Schumacher* is inapposite.

**3.** The lower court found that the debtors were told by a Board supervisor that their assessments were recorded on January 4, 1988. The debtors apparently relied to their detriment upon this information, the accuracy of which is not disputed by the Board. However, for the reasons stated herein, it does not follow that this is the date when their taxes were "assessed" pursuant to Bankruptcy Code § 507(a)(7)(A)(ii).

an assessment triggers an immediate tax lien.[4]

However, notwithstanding the Tax Code's lack of clarity on this question, it is common sense that a tax assessment, as a formal act with significant consequences, cannot occur before it is final. In California, this final date is no less than 60 days after the issuance of the notice of proposed additional tax. Prior to this final date, the assessment is best described as a tentative calculation which the taxpayer has no obligation to pay. This view is bolstered by the fact that under Tax Code § 18597,[5] the taxpayer is not required to make payment until after the assessment becomes final and after a second notice demanding payment is issued.

Thus, for the purposes of Bankruptcy Code § 507(a)(7)(A)(ii), the additional tax was "assessed" on February 22, 1988 when they became "final."

### CONCLUSION

The debtors were assessed for additional taxes as of February 22, 1988. Because this date is less than 240 days prior to the filing of their bankruptcy petition, these tax deficiencies are not dischargeable under Bankruptcy Code § 523(a)(1)(A). Accordingly, the trial court's decision is REVERSED.

---

**4.** The California Tax Code states that the lien arises when the assessment is "due and payable," which term is defined as the date on which it is "final." Tax Code § 18881.

**5.** California Tax Code § 18597 provides:

When a deficiency is determined and the assessment become final, the Franchise Tax Board shall mail notice and demand to the taxpayer for the payment thereof. The deficiency assessed is due and payable at the expiration of 10 days from the date of the notice and demand.