### In re Andrew L. CLARK and Melinda M. Clark, Debtors.

**Bankruptcy No. 90–42650 F.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Dec. 17, 1991.

---

Andrew L. Clark, pro se.

John D. Russell, Tax Div., U.S. Dept. of Justice, Washington, D.C., for Dept. of Justice.

Charles A. Banks, U.S. Atty., Little Rock, Ark., for U.S.

A.L. Tenney, trustee.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

### I. *Background*

On December 6, 1990, the debtors filed their petition under Chapter 13 of the Bankruptcy Code. On February 12, 1991, the Internal Revenue Service (IRS) filed a $177,562.99 proof of claim for unpaid taxes, interest, and penalties for the 1981, 1982, 1983, 1984, and 1986 tax years.[1]

On April 11, 1991, the debtors filed an objection to the United States' proof of claim concerning the 1984 taxes arguing that the statute of limitations had run on the assessment and collection of the 1984 taxes. On September 24, 1991, this Court held a hearing on that objection.

### II. *Jurisdiction*

The Court has jurisdiction over this pending matter pursuant to 28 U.S.C. § 1334. Further, the above proceeding is a core proceeding within 28 U.S.C. § 157(b)(2). The following memorandum opinion constitutes findings of fact and conclusions of

---

**1.** At this time, the Court will only address the objection to the proof of claim for unpaid taxes, interest, and penalties for the 1984 tax year. The debtors have filed objections to the United States' proofs of claims for the 1981, 1982, 1983, and 1984 tax years arguing that (1) the taxes for 1981, 1982, and 1983 were the subject of tax court litigation which would determine the debtors' liability for these years; and (2) the 1986 claim for taxes was dischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(i) and (ii). These issues will be addressed at a later time by the Court. It should be noted that on October 2, 1991, the United States Tax Court issued an opinion stating that the debtors' liability for the 1981, 1982, and 1983 tax years was $7,010.50, $17,428.79 (plus 50% of interest due on $9,435.79), and $17,806.18 (plus 50% of the interest due on $11,870.79), respectively.

law in accordance with Bankruptcy Rule 7052.

### III. *Findings of Fact*

At the September 24, 1991 hearing, Andrew Clark testified that on April 15, 1985, he mailed the IRS a check in the amount of $3,000 as payment on his and his wife's 1984 taxes. Moreover, Clark stated that at the same time as he mailed the check, he requested on behalf of himself and his wife, an extension of time in which to file their 1984 taxes.

Clark, testified that he, his wife, and brother-in-law, Art Mueller, prepared a penciled copy of his and his wife's personal 1984 income tax return sometime between January and May of 1985. Clark testified that he mailed the return to the IRS in May of 1985 which was at the same time the debtors mailed their individual Arkansas income tax return. Clark testified that the 1984 federal tax return was mailed by regular mail.

Clark stated that in the ordinary course of his business he would pick up the items to be mailed from his home, and then give it to his secretaries, at work, who would mail the article using the ordinary mail. Clark stated that he had no specific memory of mailing the 1984 federal tax return in May of 1985.

Clark testified that in 1990, he received a letter from the IRS stating that the IRS was unable to locate the debtors' 1984 Federal Income Tax Return. Clark stated that the letter requested that he and his wife send the IRS a copy of their 1984 tax return. Clark stated that on April 4, 1990, he mailed the IRS a copy of the 1984 tax return which he had originally mailed in 1985.

Mrs. Clark testified that she helped her brother, Art Mueller, prepare the 1984 federal tax return. She stated that she and her husband knew approximately how much they would owe for the 1984 taxes as the return was essentially complete by April 15, 1985. Mrs. Clark stated that she remembered the $3,000 check, but that she did not remember who wrote the check. Mrs. Clark testified that she could not remember if she or her husband had mailed the 1984 federal tax return to the IRS. Mrs. Clark testified that she could not remember signing the 1984 federal tax return. Mrs. Clark stated that she remembered her husband telling her about the letter from the IRS in 1990 stating that the IRS wanted a copy of their 1984 tax return.

The debtors introduced into evidence a penciled original of their 1984 tax return; a copy of their 1984 State of Arkansas individual income tax return; a copy of the $3,000 canceled check the debtors sent to the IRS in May of 1985; a copy of their business income tax return for 1984; and an unsigned letter written to the IRS by the debtor in which the debtor states that "[i]n response to your letter of March 22, 1990, I enclose herewith a copy of my 1984 return which I mailed to you on May 14, 1985."

The IRS presented testimony by Joe Woosley an IRS employee assigned to the special procedures division of the IRS. Woosley based his testimony on the IRS's exhibit one which is a computer printout of Andrew Clark's tax records.[2] Woosley tes-

---

2. The debtors objected to the introduction of the computer printout of Andrew Clark's transcript of account. The Court sustained the objection with the provision that the parties could argue the relevance of the printout in their post-trial briefs. In their post-trial reply brief, the debtors state that pursuant to Uniform Rule of Evidence 901(b)(9) the record introduced as IRS's exhibit one must be properly authenticated by the testimony of a qualified witness or custodian of the records.

It is the debtors' position that Woosley did not qualify as a witness to authenticate the record as his testimony shows that he did not participate in the making of the entries contained in the computer printout. In addition, the debtors assert that pursuant to the Uniform Rule of Evidence 1005 the proponent's witness should be able to testify that he compared the print-out with the original entries to verify the accuracy of the entries. The debtors argue that Woosley offered no such evidence.

It is the IRS's position that the record is a government record kept in the ordinary course of business by the IRS. The IRS states that Woosley authenticated the computer printout by testifying that the data processing technicians input the information into the computer, and that the document is accurate and relied upon by the IRS. In addition the IRS argues that

tified that on April 15, 1985, Mr. and Mrs. Clark paid the IRS $3,000, and filed a request for an extension of time in which to file their 1984 tax return. Woosley testified that there was no record of the debtors subsequently filing, in 1985, a tax return for the 1984 taxes.

Woosley testified that ordinarily the IRS would send the taxpayer a notice of non-receipt of a tax return. Woosley stated that an exception to this rule is when the taxpayer is under criminal investigation. Woosley stated that the IRS did not send out a notice to the debtors telling the debtors that the IRS had not received their 1984 tax return because the computer printout showed that in 1985 Andrew Clark was under criminal investigation. Consequently, based on the criminal investigation, the notice of non-receipt of a tax return which ordinarily would have been sent to the debtors had been canceled. Woosley testified that according to the computer printout, the criminal investigation of Andrew Clark ceased in July of 1989.

Woosley testified that the debtors filed a tax return for their 1984 taxes in April of 1990. The IRS introduced as exhibit three a copy of the debtors' 1984 tax return indicating that the return was received in Memphis in April, 1990. Woosley was unable to testify to an exact date of receipt, and exhibit three is unclear as to the date of receipt in April. Exhibit three does state clearly that the 1984 tax return was received in "Secondary Sort" on May 23, 1990. The Court after review of exhibit three finds that the IRS received a copy of the debtors' 1984 tax return on May 23, 1990.

## IV. *Conclusions of Law*

 Pursuant to the Code, the IRS has three years *prior* to the *filing* of a bankruptcy petition in which to collect the taxes shown on a timely filed return, assuming the taxes are assessed on the due date. *See* 11 U.S.C. § 523(a)(1) and § 507(a)(7)(A)(i); 3 *Collier on Bankruptcy*, 15th Ed., § 523.06 (1991). 11 U.S.C. § 523(a)(1)(A) and § 507(a)(7)(A)(ii) "provide that taxes assessed more than 240 days, or about eight months, prior to the filing of a petition are not only deprived of priority status but are dischargeable as well." *In re King,* 122 B.R. 383, 385 (Bankr.9th Cir. 1991). Pursuant to section 523(a)(1)(B)(ii) taxes shown on a late return filed after the due date and after two years before the petition in bankruptcy are non-dischargeable. 11 U.S.C. § 523(a)(1)(B)(ii).

Based on the above, if the IRS received the debtors' 1984 tax return in May of 1985, the return would have been timely filed. Pursuant to sections 523(a)(1)(A) and 507(a)(7)(A)(i) the IRS would be unable to collect the taxes by way of a proof of claim filed in February of 1991. If, however, the IRS received the debtors' 1984 tax return in May of 1990, the return would be a late return, and section 523(a)(1)(B) would apply resulting in the taxes being non-dischargeable.

Likewise, if the debtors filed their 1984 tax return in May of 1985, 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(ii) would render the taxes dischargeable. If, however, the return was received on May 23, 1990, and the taxes were assessed subsequent to that date, the taxes would have been assessed within 240 days prior to the debtors' filing of their bankruptcy petition resulting in the taxes being non-dischargeable. *See* 26 U.S.C. § 6501(a) (Internal Revenue Code provides amount of tax imposed be assessed after return filed); *In re King,* 122 B.R. at 385 (Internal Revenue Code and Department of Treasury Regulations determine actual date of assessment). Thus, the critical issue becomes the date of the receipt by the IRS of the debtors' 1984 income tax return.

26 U.S.C. § 7502 permits the postmark on the document or the certified or registered receipt to constitute evidence of delivery through a presumption of receipt on

Woosley's testimony concerning the origin of the entry of information, and how the information is retrieved from the computer databases verifies the printout. The Court, after reconsidering the background information of Woosley's testimony finds there is a sufficient basis to receive IRS's exhibit one as a business record.

the postmark date. 26 U.S.C. § 7502(a)(1). In the Eighth Circuit the benefit of the presumption of delivery as set out in 26 U.S.C. § 7052 will work to the advantage of the debtor-taxpayer, if the debtor-taxpayer can provide proof of a postmark. *See Estate of Wood v. Commissioner*, 909 F.2d 1155, 1161–62 (8th Cir.1990).

To obtain benefit of section 7502, the taxpayer must offer proof of a postmark-not mere evidence of mailing-as by the testimony of the postal employee who handled and stamped the document.... Moreover, by the terms of the statute, only direct proof of postmark, which proof will be extraordinarily rare outside the instances specified in the statute, will satisfy the requirements of the act. And, finally ... even direct proof of postmark raises only a presumption of delivery, which is rebuttable by the Commissioner. *See, e.g., Walden v. Commissioner*, 90 T.C. 947 (1988) (presumption of delivery was overcome by the Commissioner, and tax court made a finding of fact that the return was lost by the U.S. Postal Service and never delivered to the IRS); *H.S. & H. [Ltd.] v. United States*, 18 Cl.Ct. [241] at 244 [ (1989) ] (Commissioner introduced evidence of non-delivery through testimony about IRS record-keeping procedures, introduction of both the record transcript and a "document styled Certification of Lack of Record."). *Id.*

■ The debtors have failed to establish any proof of a postmark. At best, with the court crediting the debtors' testimony that the return was mailed by regular post, the debtors have established only a mere evidence of mailing. As stated in *Estate of Wood*, this mere evidence is not sufficient. Therefore, the debtors have failed to establish a May 1985 presumption of delivery to the IRS of their 1984 tax return. Conversely, the IRS has meet its burden of proof that the debtor filed a 1984 tax return in April of 1990. Therefore, the taxes are non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(A).

■ The Court holds however that the penalties, and interest attributed to the non-payment of the 1984 taxes are dischargeable.[3] It would be unfair and inequitable for the IRS to be able to collect penalties and interest for unpaid taxes when the IRS failed to notify the taxpayers of the non-receipt of such taxes. *Cf. In re King*, 122 B.R. at 386 (entry of assessment of taxes does not occur until after notice of deficiency).

Under the facts of this case, agent Woosley testified that it is the policy and practice of the IRS to mail within a year after a return is due, a notice of deficiency. Woosley stated that in the Clark case, the IRS decided not to mail out the notice of deficiency because Clark was under criminal investigation in May of 1986. In 1989, the IRS decided that criminal prosecution was not warranted and dismissed the investigation. Now, the IRS is attempting to collect penalties and interest on the 1984 taxes for the period of time before the due date in 1985, and the date of receipt in 1990.

The Court believes the debtor's testimony that he thought the tax return was mailed in 1984. Further, the evidence is clear that debtor sent a check for $3,000 in April of 1985, which he thought would cover any deficiency in taxes for the 1984 year. There is no evidence to establish bad faith on the part of the debtor to avoid any deficiency in payment of his 1984 taxes.

This is a case where the IRS simply chose not to follow its policy of giving notice of a deficiency. This is not to say that IRS does not have a justifiable basis for not giving notice because of a criminal investigation. Nonetheless, it would be inherently unfair for the IRS to assess interest, and penalties when the IRS decided not to put the debtor on notice of the deficiency

---

**3.** The Court is aware that the majority of courts have held that interest and penalties are also non-dischargeable if the underlying tax itself is non-dischargeable. *See In re Oldfield,* 121 B.R. 249, 253 (Bankr.E.D.Ark.1990); *In re Ferrara,* 103 B.R. 870, 871–73 (Bankr.N.D.Ohio 1989).

Nonetheless, the Court believes this case is an exception to the general rule because it was the IRS's decision not to notify the debtors of non-receipt of a tax return which resulted in the assessment of penalties and interest.

due to a criminal investigation, and then subsequently dismissed the criminal investigation for lack of prosecution. If it had not been for the criminal investigation the debtor would have been put on notice of the deficiency, and would have been in a position to resolve the deficiency thus eliminating the necessity for any assessment of interest and penalties on the 1984 return.

## V. *Conclusion*

The Court finds that the debtors filed their 1984 income tax return in April of 1990. Therefore, the Court holds that the IRS has a claim for the taxes due for the 1984 tax year. The Court holds, however, that the IRS does not have a claim for any penalties and interest on these 1984 taxes.