**In the Matter of Donald C. GLESS, Debtor.**

**Donald C. GLESS, Plaintiff,**

v.

**UNITED STATES of America, Acting Through the INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy Nos. BK92–82102, A93–8036.**

United States Bankruptcy Court, D. Nebraska.

Feb. 10, 1995.

Albert P. Burnes, Omaha, NE , for debtor/plaintiff.

Robert Metcalfe and Carol Schultze, Washington, DC, for U.S.

### MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial was held on October 13, 1994. Post-trial briefs and argument have been submitted. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

### Question Presented

Are the 1981 and 1982 federal income taxes, and statutory interest thereon, which were assessed against debtor on September 15, 1985, excepted from discharge in this Chapter 7 bankruptcy case under Section 523(a)(1)(B)(i) of the Bankruptcy Code (11 U.S.C.)?

1. The 1994 amendments to the Bankruptcy Code changed the numbering from § 507(a)(7)(A)(i) and (ii) to § 507(a)(8)(A)(i) and (ii). *See* The Bankruptcy Reform Act of 1994, 11 U.S.C. § 507(a)(8)(A)(i), Pub.L. No. 103–394 (1994).

2. The statutory language of 11 U.S.C. § 523(a)(1) and 507(a)(7)(A) are as follows:

§ 523. **Exceptions to discharge**
(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(1) for a tax or customs duty—

### Decision

Such taxes, interest and penalties are dischargeable.

### Background

This adversary proceeding was brought by the Chapter 7 debtor to obtain a determination of the dischargeability of federal income tax for the tax years of 1981 and 1982. The Internal Revenue Service (IRS) asserts that the debtor's federal income tax liability for 1981 and 1982 is not dischargeable in this bankruptcy case because the debtor did not file a tax return for those years. On the other hand, it is the position of the debtor that he filed the equivalent of a tax return and, therefore, his taxes are dischargeable.

### Law

The Bankruptcy Code provides for an exception to discharge for a tax with respect to which a return, if required, was not filed. 11 U.S.C. § 523(a)(1)(B)(i). However, if a return is filed, income taxes for a taxable year ending within three years of the bankruptcy petition filing date or assessed within 240 days of the bankruptcy petition filing date are granted a certain priority status. At the time this bankruptcy case was filed, December of 1992, that priority status was listed at 11 U.S.C. § 507(a)(7)(A)(i) and (ii).[1] Read together, Sections 523(a)(1) and 507(a)(7)(A)(i) and (ii) provide that taxes assessed more than 240 days prior to the filing of a petition or taxes shown on returns for tax years ending more than three years before the petition date are not only deprived of priority status but are dischargeable as well. *In re King*, 122 B.R. 383, 385 (Bankr.9th Cir.1991).[2]

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;
(B) with respect to which a return, if required—
(i) was not filed; or
§ 507. **Priorities**
(a) The following expenses and claims have priority in the following order:
(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

The Internal Revenue Code, at Section 6020(a) provides that if a person fails to file a required return, but provides sufficient information to the IRS to enable the tax to be determined, and if the taxpayer signs such IRS prepared return, it is the equivalent of the tax return of the taxpayer.[3]

Prior to trial, an order was entered denying a motion for summary judgment filed by the IRS. That ruling was filed on October 22, 1993. In it, the Court outlined certain conclusions of law. The following quote from that memorandum is adopted herein as a portion of the required conclusions of law:

> Exceptions to discharge pursuant to section 523(a) of the Bankruptcy Code are narrowly construed against the creditor and liberally in favor of the debtor, and the burden of proof is on the creditor claiming an exception to discharge. *Murphy & Robinson Inv. Co. v. Cross*, 666 F.2d 873 (5th Cir.1982); *D'Avanza v. United States (In re D'Avanza)*, 101 B.R. 787 (Bankr. M.D.Fla.1989). As a matter of law, this Court finds that a return filed pursuant to § 6020(a) of the Internal Revenue Code, which is prepared with the cooperation of the debtor and signed by the debtor is deemed to be a return under § 523(a)(1)(B)(i) of the Bankruptcy Code. The issues at trial will include whether the debtor cooperated with the IRS and whether he signed a document from which his taxes were determined. If the Court finds that he did so sign such a document, the tax obligation for 1981 and 1982 will be determined to be dischargeable because the language of 26 U.S.C. § 6020(a) and 11 U.S.C. § 523(a)(1)(B)(i) will be satisfied. *Accord Bergstrom v. United States (In re Bergstrom)*, 949 F.2d 341 (10th Cir.1991) (holding that substitute returns do not constitute filed returns under § 523(a) in the absence of the signature of the taxpayer); *Carapella v. United States (In re Carpella)*, 84 B.R. 779 (Bankr.M.D.Fla.1988) (holding that a signed Form 870 without accompanying schedules was a return filed by the debtor for § 523(a) purposes); *Arenson v. United States (In re Arenson)*, 145 B.R. 310 (D.Neb.1992) (noting in dictum that certain documents, Form 870, are accepted as "returns" under § 523(a)(1)(B)(i), while holding that an amended Form 1040X, which was filed after the IRS prepared SFRs and assessed taxes against the debtor, was not a return under § 523(a)(1)(B)(i)).

*Gless v. United States (In re Gless)*, Neb. Bkr. 93:515, 520 (Bankr.D.Neb.1993).

In addition to the statutes and case law referred to above, the IRS has promulgated Revenue Ruling 74-203 which states in pertinent part:

> Even though a document is not in the form described for use as appropriate return, it may constitute a return if it discloses the data from which the tax can be computed, is executed by the taxpayer, and is lodged with the Internal Revenue Service.

Rev.Rul. 74-203, 1974-1 C.B. 330 (1974) (citation omitted).

In an adversary proceeding concerning the dischargeability of a particular debt, the objecting party, the IRS in this case, has the burden of proof. FED.BANKR.R. 4005.

### Findings of Fact

The debtor was an attorney licensed to practice law in the State of Nebraska. He became a compulsive gambler and to support

---

(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
(ii) assessed within 240 days, plus any time plus thirty days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition....

3. (a) Preparation of return by Secretary.

If any person shall fail to make a return required by this Title and by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the secretary may prepare such return, which, being signed by such person, may be received by the Secretary as a return of such person.
26 U.S.C. § 6020(a).

his compulsion, he took client funds and lost them in commodity speculation. During 1982, and before his 1981 federal income tax return was due, he met with an attorney and revealed what he had done. He received advice from the attorney concerning his tax obligation. That advice included an admonition not to file a tax return which was false and not to file a tax return at all until any potential criminal action against him had been resolved.

Acting upon such advice, he requested and received an extension of time to file his 1981 income tax return. That extension expired in May of 1982.

At approximately the same time as the extension expired, he turned in his license to practice law and informed the law enforcement authorities of his actions. He was charged with and pled guilty to "theft by deception and conversion by bailee." On October 22, 1982, he was sentenced to two concurrent terms of five to fifteen years in the state penitentiary. He immediately began serving his prison sentence at the prison facility in Lincoln, Nebraska.

During his prison confinement, he was sued by some of his clients for his actions. He confessed judgment in three lawsuits and judgments were entered in the District Court of Dodge County, Nebraska.

While he was incarcerated, his wife brought letters to him from the IRS. Those letters requested information about an unfiled tax return. The letters provided an 800 number for him to use if he had any questions or comments. He made arrangements with the prison authorities to use a telephone and called the IRS at the 800 number. He informed the IRS representative that he was in prison and unable to prepare tax returns.

Some time after the telephone call, the debtor was visited by a representative of the IRS at the prison facility. He informed the representative that he was not in the position to file his tax returns because he did not have his financial information available to him. However, he informed the representative about the criminal case and the civil judgments and gave the representative information about his law partnership income and commodities income. He directed the IRS representative to the entities that would provide information about his 1981 and 1982 income.

Approximately one month later, the debtor was contacted by agents of the IRS at the prison. He provided the agents with additional financial information and reviewed the information that the IRS representatives had obtained from the prior sources to whom he had referred them.

A few months later, representatives of the IRS met with him at the trustee dormitory at the state correctional facility in Lincoln, Nebraska. At that time, the IRS representative presented him with documents for his review. The documents showed the total amount of tax which he owed. He told the IRS representatives that he objected to the total amount of the tax because it was extremely high and because the form showed no deduction for the funds which he had lost in the commodity speculation. After arguing with the IRS representatives concerning the amount of the tax and the lack of deductions, he signed the documents and gave them to the IRS agents. He was not given a copy of the documents that he signed and, thereafter, he was not again contacted concerning failure to file the 1981 and 1982 returns.

In 1985, while the debtor was still in prison, and after he had signed the documents referred to above, he received a demand letter from the IRS for payment of the tax liability. He was then contacted in person by a collection agent of the IRS. He discussed with the agent his current prison income, assets, liabilities and the judgments in the District Court of Dodge County, Nebraska. He prepared an asset schedule and provided the collection agent with information about his family, including his parents, to enable the IRS to verify that he had not transferred any assets to relatives.

Later in 1985, the debtor had a meeting with an IRS agent at the work-release center at the state correctional facility in Lincoln, Nebraska. He and the agent discussed all of the financial information that the agent had gathered and discussed a proposed payment schedule. He made it clear to the agent that

he was unable to make payments because of his prison situation.

The debtor was then contacted at the work-release center by a collection agent of the IRS. The agent requested that he sign a waiver of the statute of limitations so that the IRS could continue to attempt to collect from him his federal income tax liability for the tax years of 1981 and 1982 after he was released from prison. He was told by the agent that if he did not sign the waiver, that fraud charges could be brought against him. He refused to sign the waiver and requested the agent to leave.

The debtor was released from prison in July of 1986. He then began receiving collection letters from the IRS demanding payment for the 1981 and 1982 tax liability.

Shortly after his release, the debtor obtained employment in the Omaha, Nebraska, area. In the spring of 1989, he moved to St. Louis, Missouri, because of a job transfer. He was in the St. Louis area for approximately eighteen months. In July of 1990, he was contacted by a collection agent of the IRS regarding the payment of his 1981 and 1982 federal tax liability. He met with an IRS agent in Clayton, Missouri, and provided the agent with a summary of assets and liabilities. He prepared an offer and compromise which was made to the IRS and was later rejected.

In September of 1992, the debtor was contacted by another collection agent of the IRS after he moved back to Nebraska. He was asked to complete another summary of assets and liabilities. At that point in time, he determined that he had no hope of paying the tax liability and filed a Chapter 7 bankruptcy proceeding in December, 1992.

From the time of his initial incarceration, the debtor did cooperate with IRS and provide information to the IRS enabling the IRS to determine his tax obligations for 1981 and 1982. He did sign one or more documents listing his tax liability for those years and did deliver the signed documents to the IRS representative.

## Discussion

### A. Trial Evidence of IRS

The IRS did not present any testimony concerning the history of the IRS contacts with the debtor. No employee of the IRS testified. The IRS presented nothing in rebuttal to the testimony of the debtor concerning the various meetings with the IRS agents while he was in prison, the execution of documents reflecting his tax information, or his cooperation with the agents in providing them sufficient material to enable them to prepare his tax return.

Instead, the IRS submitted into evidence Exhibit A, which is an IRS Form 2866 and which is identified for the record as a "Certificate of Official Record" showing assessments and payments for the debtor for tax periods December 31, 1981, through December 31, 1982. Exhibit A is a computer printout which contains dates and short summaries of items that appear on the computerized records of the IRS. Exhibit A does not include copies of any correspondence with the debtor, copies of any documents filed by the debtor or filed by the IRS, copies of any reports prepared by agents of the IRS, copies of any forms containing calculations which resulted in the determination of the tax, penalties and interest.

Numbered page 1 of Exhibit A shows that on May 14, 1982, an extension of time to file was granted to May 20, 1982. The next entry is the date September 13, 1984, and the explanation for the entry is "no liability return filed." The next entry is dated September 17, 1985, and shows an assessment of tax, late filing penalty, negligence penalty, estimated tax penalty, and interest. On numbered page 2, there is another late filing penalty shown on September 17, 1985, and then, on August 29, 1988, there is an entry for a "failure to pay tax penalty."

The total amount of taxes, penalties and interest as of June of 1993 is $888,083.97. Not including interest, the amounts listed as assessed on September 17, 1985, for the tax year ending December 31, 1981, include $135,467.10 as a tax deficiency; $30,480.10 as a failure to timely file penalty; $47,002.03 as a negligence penalty; and $10,388.89 as a penalty for failure to make estimated tax

payments. For the tax year ending December 31, 1982, the tax deficiency is in the amount of $54,239.00; the penalty for failing to file is $13,559.75; the negligence penalty is $11,726.90; and the penalty for failure to make estimated tax payments if $5,279.73.

For the tax year ending December 31, 1981, the penalties total $87,870.92 on a tax of $135,467.10.

For the tax year ending December 31, 1982, the penalties total $30,566.38 on a tax of $54,239.00.

Numbered page 4 of Exhibit A purports to show actions taken by the IRS with regard to the debtor's tax situation. The first entry is February 7, 1983. It is identified as "delinquency inquiry." The second entry is dated February 28, 1983, and is identified as "delinquency inquiry." The third entry is dated June 20, 1983, and is identified "taxpayer delinquency investigation." The next entry is dated September 17, 1985, and is identified as "notice of balance due."

Thereafter, entries generally indicate that matters were referred to some department for collection and that delinquency notices were sent out at various dates from January 6 of 1986 through October 19 of 1992.

The IRS also offered into evidence Exhibit B which is a blank copy of a Form 1040, Individual Income Tax Return for the year 1981 and Exhibit C which is a blank Form 1040, Individual Income Tax Return for the tax year ending December 31, 1982.

Counsel explained, but no witness testified, that the document which is represented on page 1 of Exhibit A as being a "no liability return filed" on September 13, 1984, is actually a Form 1040 for the appropriate year with the name of the debtor, the debtor's social security number and a zero balance reported as the tax due. In IRS parlance, it is called a substitute for return or SFR. Apparently, following the usual IRS procedure, the SFR is filed by the IRS to begin an account on which an assessment may be made. According to counsel for the IRS, but not testified to by any witness, or supported by any documentation, the signature of debtor would not appear on a zero liability SFR.

The IRS does not have *any* documents concerning the 1981 and 1982 tax liability of this debtor, except for the computer printout submitted as Exhibit A. It does not have copies of any correspondence reflected on page 4 of Exhibit A as "delinquency inquiry" dated February 7, 1983, and February 28, 1983. It does not have any documentary information concerning the "taxpayer delinquency investigation" which apparently began on June 20, 1983. It does not have a copy of the SFR showing the zero liability. It does not have a copy of the notice of balance due dated September 17, 1985. It does not have copies of anything.

### B. *Credibility of Debtor*

█ The IRS has urged this finder of fact to seriously consider the credibility of the debtor. The IRS points out that the debtor is a person who has admittedly breached his trust obligations to his clients, that he has been found guilty of "theft by deception and conversion by a bailee" and that he has all of the motivation necessary for testifying falsely about these tax matters. His motivation, according to the IRS, is to get out of paying taxes that he unquestionably owes.

This fact finder has seriously considered the credibility of the debtor. His testimony is believable. It is true that he did breach his obligations to his clients, he did steal from them and he was convicted of crimes. However, he turned himself in, voluntarily surrendered his license to practice law, admitted to the law enforcement authorities what had occurred, pled guilty, received a prison sentence and served it. He has had no scrapes with the law since. The Court certainly does not condone his criminal acts, but must, when judging his credibility, give weight to the above-listed factors which indicate his acknowledgment of past wrongdoing and his intention to lead an honest life after paying for such wrongdoing.

The debtor testified at length under direct and cross examination concerning what happened between 1982 and 1985 with regard to his contacts with the IRS. His testimony is totally consistent with the records presented by the IRS in Exhibit A. He testified that his wife brought him correspondence from the IRS concerning his tax return. Exhibit

A reflects one or more mailings from the IRS to the debtor in early 1983. He testified that he contacted the IRS through an 800 number on the letter and then was visited by IRS agents. Exhibit A shows that in June of 1983 a taxpayer investigation was begun. Although there is no detail contained in Exhibit A about what a taxpayer investigation is or whether or not agents would normally have visited with the debtor, it is clear from Exhibit A that there was an investigation by some employee of the IRS.

The debtor testified that he met with the IRS agents several times over several months and eventually signed documents which looked to him like tax returns, which contained his name, social security number and an amount due for each year. He testified that he argued with the agents about the numbers, but eventually signed the documents.

On cross examination, the debtor was shown Exhibits B and C, blank tax returns for 1981 and 1982. He testified that he was not sure whether he signed documents exactly like those exhibits, but that he certainly recognized that they were tax returns and that he believed at the time that he signed the documents that he signed tax returns.

Within fifteen months of the date Exhibit A shows as the beginning of an investigation, Exhibit A shows that some type of a document was filed with the IRS by someone and that the document is identified on the records of the IRS as a "no liability return."

The debtor testified that after he signed the documents and gave them to the IRS agents, he no longer was contacted about filing a tax return. Instead, he was contacted about paying the taxes. Exhibit A shows that in September of 1985 a tax assessment was made and, thereafter, the IRS made many written contacts with the debtor concerning collection.

■ The debtor's testimony is totally consistent with the records of the IRS as reflected on Exhibit A. It is not the obligation of the debtor to prove the dischargeability of his obligation to a creditor, even if the creditor is the IRS. It is the obligation of the IRS to present evidence to this Court from which this Court could conclude that the tax obligation is nondischargeable. At some point in time, the IRS had the means by which to submit such evidence. It had the "no liability return." It had copies of the correspondence initially sent to the debtor. It had some record of the type of investigation that began in June of 1983 and the results of that investigation. It had some documents which showed the amount of tax to be assessed.

The amount of tax that was assessed had to be calculated from specific income figures. The tax is not a rounded amount. The tax for 1981 is $135,467.10. The tax for 1982 is $54,239.00. These are not rounded off figures. They came from a calculation made from some records. The IRS, at the time of the assessment in September of 1985, had the records. The IRS did not present any of the records at trial.

### C. *The Tax Records*

During discovery, the debtor submitted to the IRS copies of several collection letters he received from the IRS. The debtor requested all of the records that the IRS had concerning the 1981 and 1982 tax obligation. The IRS responded that it had no records other than Exhibit A. The IRS did not even retain in its files copies of the collection letters the debtor was able to show he had received.

In this case, the penalties for each tax year exceed 50% of the assessed tax. The Internal Revenue Service Manual Handbook contains a procedure for destruction of documents. That procedure at paragraph 56 states:

(2) Returns in penalty file. Returns on which a penalty of 50% or more has been assessed, and cases for which Criminal Investigation Division has requested longer retention. (Job No. NC1–58–82–3, Item 2)

(a) Destroy 6 years and 9 months after end of calendar in which case closed.

IRS MANUAL HANDBOOK 1(15)59.26, Exhibit 100–1 Record Control Schedule 206, No. 57 (1995).

It appears from the Internal Revenue Service Manual Handbook quoted above, that the IRS currently has a policy which re-

quires the IRS to keep copies of documents until long after the case is closed. The IRS presented no evidence that document destruction procedures were significantly different in the 1980's. In this case, the IRS asserts a tax liability of approximately $190,000.00. It asserts penalties of more than half of that amount and interest of several hundred thousand dollars. Yet, the system used by the IRS did not preserve any records with regard to this uncollected tax, penalty and interest.

It has been the position of the IRS throughout this case that the computer printout, Exhibit A, accurately reflects what actually occurred and was filed with the IRS in this case. It is the position of the IRS that if the computer printout says "no liability return filed" the Court must assume that the document that was filed did not have the signature of the debtor. It is the position of the IRS the Court must assume that the assessment which was made in September of 1985 was made through some type of investigation, using numbers which had not been provided by or agreed to in writing by the debtor.

The IRS position requires the Court to assume too much. There is no evidence that, in this case, the computer reference "no liability return filed" means a document that does not contain the signature of the debtor. A statement by United States District Judge Judd of the Eastern District of New York in *Harzvi v. United States*, 73–2 U.S. Tax Cas. (CCH) ¶ 9712, 32 A.F.T.R.2d (P–H) 73–5722, 1973 WL 629 (E.D.N.Y. Aug. 29, 1973), is on point. Judge Judd said,

> Mr. Harzvi was a credible witness, who seemed to be telling the truth. His testimony that he mailed the returns was uncontradicted. Circumstantial evidence to the contrary, from the failure of the IRS records in 1970 and 1973 to show the fact of filing, is not sufficient to overcome Mr. Harzvi's testimony. The IRS employees' faith in the perfection of their system is commendable, but the court is not persuaded that IRS index records are the only

man-made records that are free from error.

*Id.*

This Court is unconvinced that the document filed in this case lacked the debtor's signature. The absence of evidence on this point is construed against the IRS. It once had the ability to prove the correctness of its position, and it has the burden to do so.

The Internal Revenue Code itself provides authority for a taxpayer to cooperate with the IRS, sign some type of document, and have that document considered as a return. Section 6020(a) is the applicable statutory provision and, although quoted above, it shall be quoted again:

> If any person shall fail to make a return required by this Title and by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such a return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a).

█ The debtor failed to personally file a return as required by the Title, but consented to disclose all information necessary for the preparation thereof and signed the document containing such information. He gave it to agents of the IRS. A document was filed with the IRS. The IRS has provided no evidence that the document that was filed is not the same as the document signed by the debtor and taken by agents of the IRS from him while he was incarcerated.

█ The burden on a dischargeability issue under 11 U.S.C. § 523(a) is upon the entity objecting to discharge. The IRS has failed to present sufficient evidence to meet this burden.

*Conclusion*

The debtor signed, and delivered to the IRS, a document which is the equivalent of a tax return for the tax years ending December 31, 1981, and December 31, 1982. There-

fore, the debtor's tax liability is dischargeable in this Chapter 7 bankruptcy case.

Separate journal entry shall be filed.