**In re E. Thomas WILLIAMS, Jr., Debtor.**

**Bankruptcy No. 893–80004–478.**

United States Bankruptcy Court,
E.D. New York.

May 19, 1995.

---

Weinberg, Kaley, Gross & Pergament, P.C. by Marc A. Pergament, Garden City, NY, for debtor.

G. Oliver Koppel, Atty. Gen. for State of N.Y. by David S. Cook, Marcie S. Mintz, New York City, for New York State Dept. of Taxation and Finance.

### DECISION ON MOTION TO EXPUNGE OR REDUCE NEW YORK STATE REAL PROPERTY GAINS TAX AS NOT ENTITLED TO PRIORITY STATUS PURSUANT TO 11 U.S.C. SECTION 507(a)(8)

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion by E. Thomas Williams, Jr. (the "Debtor") to expunge and/or reduce the claim of the New York State Department of Taxation and Finance (the "Department of Taxation") for, *inter alia*, amounts owed under the New York State Real Property Gains Tax (Article 31–B, Tax Law § 1440 *et seq.*) (the "Gains Tax"). The Debtor objected to the portion of the proof of claim relating to the Gains Tax on several grounds. In supplemental briefs and at oral argument, the Debtor raised the threshold issue of whether the Gains Tax is to be properly classified as a priority tax pursuant to 11 U.S.C. Section 507(a)(8)(A)[1], or whether the amount due should be treated as a general unsecured claim. In a prior decision dated October 28, 1994, the Court concluded that the Gains Tax is a tax "on or measured by income". The issue remaining is whether the timing of the assessment is within the statutory limitation pursuant to 11 U.S.C. Section 507(a)(8)(A)(i), (ii) or (iii) of the Code.

### FACTS

In October 1982, the Debtor purchased shares to approximately 690 apartments in the cooperative known as Fordham Hill. The Debtor then commenced the sale of these cooperative apartment units which continued until July 1991. In accordance with the Gains Tax, real property owners who sell real property in excess of $1,000,000.00 consideration are liable for a tax equal to ten percent of the gain. The gain is calculated by subtracting the original purchase price from the actual selling price of the property being transferred.

According to the Department of Taxation's proof of claim, the Gains Tax in the amount of $1,101,247.00 became due on May 12, 1983. On October 18, 1989, the Department of Taxation issued a Statement of Proposed Audit Adjustment to the Debtor relating to the sale of the Fordham Hill apartments. On or about October 30, 1989, the Debtor responded to the estimated Statement of Proposed Audit Adjustment, which commenced the assessment process. After obtaining additional information from the Debtor, a Statement of Proposed Audit Adjustment was prepared based on actual audit results by the Department of Taxation on November 14, 1990.

---

1. Under § 304(c)(2) of the Bankruptcy Reform Act of 1994, H.R. 5116 (eff. October 22, 1994), priority of taxes, formerly governed by § 507(a)(7), is now governed by § 507(a)(8).

Subsequently, on January 25, 1991, the Department of Taxation issued a Notice of Determination which assessed the Debtor's tax arrears (Exhibit D, Affidavit of Department of Taxation to Motion). The Notice of Determination provided as follows:

"NOTE: You must file a Request for Conciliation Conference or a Petition For a Tax Appeals Hearing by 04/25/91.... If we do not receive a response to this notice by 04/25/91: This notice will become finally and irrevocably fixed and subject to collection action."

The Debtor conceded that the Gains Tax was due and owing to the Department of Taxation. As a result, the Debtor did not file a Petition For a Tax Appeals Hearing. However, the Debtor did question the method employed to determine the amount of the tax and penalty assessed, and thus filed a Request For a Conciliation Hearing on April 24, 1991, to determine the proper method for calculating the Gains Tax due. On March 11, 1992, a Conciliation Conference was held between the Debtor and the Department of Taxation and a Conciliation Order was issued sustaining the assessment on July 10, 1992. On July 8, 1992, an involuntary petition under Chapter 7 was filed against the Debtor. This involuntary petition was vehemently disputed, and several contested hearings were scheduled and held before an order for relief could be entered. No order for relief was ever issued with respect to the involuntary petition. However, on September 8, 1992, the Debtor converted the involuntary case into a voluntary Chapter 11 case.

On July 10, 1992, the Conciliation Order was issued post-petition. On October 8, 1992, the Debtor petitioned for a Division of Tax Appeals ("DTA") hearing, which was suspended due to the pending Chapter 11 case. On September 8, 1992, the Debtor filed the instant objection to claim.

### DISCUSSION

Bankruptcy Code Section 507 deals with priorities. Pursuant to Section 507(a), the following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

The Department of Taxation has taken the position that no final assessment of the Debtor's Gains Tax liability had taken place as of the date of the filing of the petition, and therefore the Gains Tax liability falls within Section 507(a)(8)(A)(iii) of the Bankruptcy Code. The Debtor, on the other hand, asserts that the Gains Tax was assessed by the Department of Taxation on January 25, 1991, and that the time to file a Petition for an Appeals Hearing terminated 90 days thereafter, or April 25, 1991. Since the Debtor only requested a Conciliation Conference prior to the April 25, 1991 termination date, and did not dispute that Gains Tax was owed, the assessment became final on April 25, 1991, which is more than 240 days preceding the filing of the petition. The Debtor also asserts that Subsection (iii) is limited in applicability to late filed or fraudulent tax returns, due to the references to Section 523(a)(1)(B) and (a)(1)(C) of the Code. Therefore, the Debtor argues that none of the three subsections of Section 507(a)(8)(A) of the Bankruptcy Code apply to the Gains Tax in question. The Debtor misinterprets the controlling statutes.

**46**

Section 507(a)(8)(A)(iii) of the Code, as the subsection upon which the Department of Tax is relying, is the focus of this decision. At the outset, the Debtor is operating under the false impression that this subsection only applies to late filed or fraudulent tax returns. However, Subsection (iii) clearly exempts these from consideration. *See In re Treister,* 52 B.R. 735, 738 (Bankr. S.D.N.Y.1985). Therefore, the applicability of this subsection turns on a different issue, which is the date of "assessment" of the Gains Tax. Although the Bankruptcy Code contains no definition of the term "assessed", an assessment has been described as "a formal, discrete act with specific legal consequences." *In re King,* 122 B.R. 383, 385 (9th Cir. BAP 1991), *aff'd,* 961 F.2d 1423 (9th Cir.1992), quoting *Clark v. United States* (*In re Heritage Village Church and Missionary Fellowship* ), 87 B.R. 401, 403 (D.S.C.), *aff'd,* 851 F.2d 104 (4th Cir.1988). In order to make the determination of when the tax has been assessed, reference must be made to the specific tax code in question. *In re King,* 122 B.R. at 385. In the case of the Gains Tax, the date of assessment is governed by New York State Tax Law Sections 1444(1) and 170(3–a)(b). The Notice of Determination stated on its face, in accordance with New York Tax Law Section 1444(1), that the Debtor has 90 days within which to protest the Notice of Determination. By its terms, the Notice of Determination could not have been "final" until April 25, 1991, when the 90 days had expired.

If the Debtor had taken no further action, the Gains Tax would have been assessed as of April 25, 1991, which date is more than 240 days prior to the July 8, 1992 involuntary petition date.[2] This would have taken the Gains Tax out of the purview of Section 507(a)(8)(A) of the Code, rendering the Gains Tax liability an unsecured, non-priority claim. However, the Debtor took the step of requesting a conciliation conference on April 24, 1991, prior to the date the assessment was to be imposed. Under Tax Law Section 170(3–a)(b), "notwithstanding

any provision of law to the contrary, [a request for conciliation conference] shall suspend the running of the period of limitations for the filing of a petition protesting [a Notice of Determination] and requesting a hearing." The conciliation conferee has the authority to "waive or modify penalty, interest and additions to tax." Tax Law Section 170(3–a)(c). The Debtor made a request for a Conciliation Conference on April 24, 1991. This request suspended the time period for the Debtor to protest the Notice of Determination past the April 25, 1991 date. This suspension occurred even though the Debtor objected only to the method of calculation, and not to the imposition of the Gains Tax itself.

As a result of the request for a Conciliation Conference, a Conciliation Order was issued on July 10, 1992. Tax Law Section 170(3–a)(e) provides that a conciliation order is binding on both the taxpayer and the Department of Tax unless the taxpayer "petitions for a Divisions of Tax Appeals [DTA] hearing within ninety days after the conciliation order is issued, notwithstanding any other provision of law to the contrary." It should be noted that unless issuance of the Conciliation Order dated July 10, 1992 constituted merely a ministerial act, the Conciliation Order is either void or voidable as it was issued post-petition. *See Rexnord Holdings v. Bidermann,* 21 F.3d 522, 527–28 (2d Cir. 1994). On October 8, 1992, the last day to do so, the Debtor petitioned for a DTA hearing. As the Debtor petitioned for a DTA hearing post-petition, the Department of Tax could do nothing further to finalize the assessment process. Section 362(a) of the Bankruptcy Code prohibited the assessment process from continuing. However, the Department of Tax did file a proof of claim in this case seeking priority status. As a result of the Debtor's request, the Gains Tax remains assessable today, and meets the requirements for priority status as enunciated in Section 507(a)(8)(A)(iii) of the Code.

The reasoning set forth above is in accordance with the case law on this issue. As

---

**2.** The date of filing of the involuntary petition is the controlling date for the purposes of determining the applicability of § 507(a)(8)(A) of the

Code, even though the Debtor later applied for conversion to Chapter 11.

stated by the Bankruptcy Appellate Panel for the Ninth Circuit in *In re King,* 122 B.R. at 387, the actual tax assessment cannot occur until it is "final" as determined by the relevant statute. In this case, the assessment becomes final only upon expiration of the time to contest the Notice of Determination. As stated in the Notice of Determination, the determination does not become irrevocably fixed until the deadline expires. Section 170(3–a)(b) of the Tax Law specifically provides that the time to file a petition protesting the determination is suspended upon the filing of the Notice of Conciliation.

In addition, as in the present case, *In re General Development Corp.,* 165 B.R. 691, 695 (S.D.Fla.1994) involved a Florida taxpayer who filed a challenge with the tax department to a notice of deficiency. The Southern District Court of Florida found that the relevant statute exempted any challenged portion of the tax deficiency from becoming an assessment which could be collected after the expiration of 60 days from the notice of deficiency. Once the Debtor protested the tax, the notice could not ripen into an assessment, until the taxpayer's objections had been fully adjudicated in the appropriate action. This prevented the assessment from taking place for the purposes of Section 507(a)(8) of the Code.

To date, the Debtor's objections to the Gains Tax remain to be fully adjudicated, and ultimately assessed. The hearing pursuant to the Debtor's request, for which Debtor timely applied, has not yet commenced due to the filing of the involuntary Chapter 7 petition. Therefore, the Department of Tax has been precluded from finally assessing the amount due pursuant to the Gains Tax to date.

### CONCLUSION

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. Sections 1334 and 157(a). This is a core matter pursuant to 11 U.S.C. Section 157(b)(2)(B).

This Court finds that the Gains Tax due from the Debtor falls within Section 507(a)(8)(A)(iii) of the Bankruptcy Code as it was not assessed before, but remained as-

sessable after the commencement of this case. Such tax is entitled to priority status pursuant to § 507(a)(8) of the Bankruptcy Code.

Settle an order in accordance with this decision.