In re Pendleton C. WAUGH, Debtor.

Pendleton C. Waugh, Appellant,

v.

Internal Revenue Service, Appellee.

Bankruptcy No. 396–35759–SF–7.
Adversary No. 398–33721.
Civ.A. No. 3:99–CV–1260–L.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 28, 2001.

Steven A. Felsenthal, Dallas, TX, pro se.

Pendleton C. Waugh Dallas, TX, pro se.

Jon E. Fisher, Attorney at Law, U.S. Department of Justice, Tax Division, Dallas, TX, for Internal Revenue Service.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

This is an appeal from an order granting summary judgment to Appellee, entered February 19, 1999 by the United States Bankruptcy Judge. The order ruled that an income tax assessment against the Debtor/Appellant, for the 1986 tax year, was not discharged by the bankruptcy court's order of discharge on December 23, 1997. After careful consideration of the briefs, supporting evidence, and applicable law, the order of the bankruptcy court is **affirmed**.

### I. *Factual and Procedural Background* [1]

This case revolves around the 1986 tax return for Pendleton Waugh ("Waugh") and his wife. Waugh contends that the return was signed and mailed on May 21, 1987 (after having received an extension of the filing deadline), but the IRS contends that the return was never received. On March 20, 1989, Waugh's wife responded to an inquiry from the IRS concerning the missing tax return by sending an unsigned copy of the 1986 return. The copy of the return did include two specific documents that were signed by Waugh: 1) a declaration that Waugh was in compliance with IRS requirements for the substantiation of travel and entertainment expenses, *see* I.R.C. § 274(d); and 2) a copy of the previously filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return.

The IRS received the copy of the return on March 24, 1989, and subsequently requested that the Waughs execute a verification form under penalty of perjury. Waugh contends that he never received this request for a signature. On August 21, 1989, the IRS sent the Waughs a request for payment for the balance still owed for the 1986 tax year, including interest and penalties. The Waughs sent a check in the full amount requested on September 1, 1989.

---

1. The facts contained herein are either undisputed or, where they are disputed, presented in the light most favorable to Appellant, as the party opposing the bankruptcy court's grant of summary judgment.

The Waughs' 1986 tax return included a loss of at least $364,000 [2] from his share of the Agri–Cal Venture Associates partnership ("Agri–Cal"),[3] which was also registered as a tax shelter. This loss effectively offset much of the Waughs' other income for the year, including wages of $120,061 and capital gains of $445,004, reducing their taxes accordingly. The IRS' copy of the 1986 tax return was stamped "Accepted Non–TEFRA Issues," apparently on December 7, 1989. By so doing, as will become apparent in the discussion to follow, the IRS apparently excluded from its "acceptance" of the return any items relating to the Waughs' proportional share of the results recorded by any partnerships in which they were a partner, including Agri–Cal.

"TEFRA" is a reference to the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 96 Stat. 324. The key provisions with respect to the Waughs' return were in Title IV, codified as amended at I.R.C. §§ 6221–33, which changed the way that the IRS reviewed how individual partners reported the results of partnerships. TEFRA was enacted

> to improve the auditing and adjustments of income tax items attributable to partnerships. TEFRA provides auditing and litigation procedures which have shifted the Service's focus from the individual partner to the partnership as a whole, thus creating an important dis-

tinction between partnership and nonpartnership items. The law creates partnership-level procedures to deal with partnership items, that is, to determine "the tax treatment of items of partnership income, loss, deductions, and credits ... at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners."

*Alexander v. United States*, 44 F.3d 328, 330 (5th Cir.1995) (citation omitted). "Partnership items" and "nonpartnership items" *both* refer to a partner's proportionate share of partnership income, losses, or deductions that are included on the partner's individual return, but the two categories are treated differently by the Internal Revenue Code, in terms of how they are audited and adjusted and (as discussed below) the period of limitations within which the IRS must make any assessments based on those adjustments.

Partnership items, which are those "more appropriately determined at the partnership level than at the partner level," I.R.C. § 6231(a)(3), are audited and adjusted by the IRS at the partnership level and therefore will be treated consistently for all partners. Nonpartnership items are examined and adjusted at the individual partner level, and may not be treated the same as for other partners. Most items on a partnership information

---

**2.** The Schedule E and Form 1040 showed a loss of $364,000, while the Form K–1 provided to him by the partnership showed that his share of the partnership's losses was $373,586. Waugh implies that he delayed filing his 1986 tax return because he was waiting for the K–1 from Agri–Cal. His brief states that he received the K–1, and sent it to his tax preparer, on May 18, 1987; his tax preparer completed the return the same day; and the return was filed on May 21, 1987. From this, one would assume that the return and the K–1 would be consistent. Waugh's brief does not discuss the discrepancy. The

court also notes that the copy of the 1986 tax return offered by Waugh was not signed by the tax preparer.

**3.** A partnership such as Agri–Cal files an information return with the IRS, *see* I.R.C. § 6031, but the partners' proportionate shares of the partnership's income, losses, and deductions are reflected directly in the returns of individual partners rather than taxed at the partnership level. I.R.C. §§ 701–02.

return will be "partnership items." Under certain circumstances an item that would normally be treated as a partnership item will be treated instead as a nonpartnership item, if "to treat items as partnership items will interfere with the effective and efficient enforcement" of the tax laws. I.R.C. § 6231(c)(2).

The IRS notation that the return was accepted for non-TEFRA issues thus indicated that the examination of any partnership items had not necessarily been concluded, as such an examination would be conducted at the partnership level rather than at the individual partner level. The IRS initiated an examination of Agri–Cal's operating loss for the 1986 tax year in 1990 and mailed a final partnership administrative adjustment ("FPAA") notice to the "tax matters partner" on March 14, 1990 and to other partners including Waugh on April 23, 1990. The proposed adjustment would affect all partners in Agri–Cal, including Waugh, to the extent of their proportionate share. A petition for readjustment, contesting the FPAA, was filed in the United States Tax Court on June 13, 1990. As of October 8, 1998, this proceeding was still pending before the Tax Court.

Waugh filed a bankruptcy petition under Chapter 11 on August 15, 1996, which was converted to a Chapter 7 proceeding on December 17, 1996. The IRS filed a Proof of Claim on January 31, 1997 that included an unassessed tax liability for the 1986 tax year, and then sent Waugh a statutory notice of deficiency on June 3, 1997. An amended Proof of Claim, including the unassessed tax liability for the 1986 tax year, was filed on November 4, 1997, and on December 23, 1997 the bankruptcy court entered an Order of Discharge. The IRS issued an assessment for the amounts in question on August 17, 1998. The assessment for the 1986 tax year was based on disallowing substantial portions of the losses recorded by Agri–Cal. Waugh's original share of those losses was $364,000, of which $353,015 was disallowed by the IRS.

Waugh filed to reopen the bankruptcy case on October 13, 1998, seeking discharge of the tax assessment. The IRS conceded that assessed penalties and associated interest were dischargeable, but contested the discharge of the income tax liability itself. Waugh filed a Motion for Summary Judgment, and the IRS filed a Cross–Motion for Summary Judgment. The bankruptcy court denied Waugh's motion and granted the IRS motion. Waugh then appealed to this court pursuant to 28 U.S.C. § 158(b) and Fed. R. Bankr.P. 8001.

## II. *Standard of Review*

As this court functions as an appellate court when reviewing a bankruptcy court's decision, the same standards of review generally applied in federal court appeals also apply to this court. *In re Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992). While the bankruptcy court's conclusions of law are reviewed *de novo, In re Pro-Snax Distribs., Inc.,* 157 F.3d 414, 420 (5th Cir.1998), its findings of fact are not to be set aside unless clearly erroneous. *In re Webb,* 954 F.2d at 1104. A grant of summary judgment is reviewed *de novo. In re National Gypsum Co.,* 208 F.3d 498, 504 (5th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000).

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee*

*Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the

suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

Waugh raises two issues on appeal: 1) that summary judgment was not proper because his 1986 tax return was filed more than two years prior to his bankruptcy petition and therefore associated tax liabilities are dischargeable; and 2) the bankruptcy court erred by not entering specific findings of fact and conclusions of law supporting its grant of summary judgment.

■ The court rejects Waugh's second argument. The bankruptcy court issued a two-page order with no explanation of how it reached its conclusion that summary judgment for the IRS was warranted. The better practice is obviously to document the basis for granting summary judgment, but Waugh cites no support, and the court is unaware of any, that requires the bankruptcy court to do so. Moreover, a court would not "find" or determine facts, because in the summary judgment context, the court sets forth and relies on material facts which are not in dispute. In any event, remand to the bankruptcy court to enter specific findings of fact and conclusions of law is not necessary. The court will review the grant of summary judgment *de novo,* eliminating

any need for the remedy sought by Waugh.

■ His first argument is also insufficient. As a starting point, the court examines the law surrounding bankruptcy discharges. A discharge order generally "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727. Certain debts, however, are not discharged by the order, including:

for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1). The taxes referenced by 11 U.S.C. § 523(a)(1)(A) include

a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240

days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(8)(A). The IRS must prove that the tax liabilities are exempt from discharge by a preponderance of the evidence. *In re Grothues*, 226 F.3d 334, 337 (5th Cir.2000).

### A. *Exemption for Tax Returns not Filed*

Waugh contends that his tax liability for 1986 is not exempt from discharge under § 523(a)(1)(B)(i) because his 1986 return *was* "filed." The IRS contends that the return was *not* "filed." The discussion focuses on two different potential "filing" dates—the original filing in 1987, which the IRS contends it did not receive, and the copy mailed to the IRS in 1989, which the IRS received but which was not signed.

■ Concerning the alleged filing in 1987, the court concludes that the IRS has proved by a preponderance of the evidence that the return was not filed. The record on appeal includes evidence supporting this conclusion, such as the IRS Certificate of Assessments and the letter mailed by the IRS to Mrs. Waugh stating that it had not received a return from her. Waugh submitted, as exhibits to his Appellant Brief, affidavits from himself and his tax preparer regarding the mailing, in 1987, of his 1986 tax return. Whether this would suffice, pursuant to I.R.C. § 7502, to overcome the IRS' evidence that the return

was not received is not clear.[4] The court need not make that determination, however, because the affidavits were not part of the record on appeal[5] and therefore cannot be considered. *Cf. United States v. Hatch,* 926 F.2d 387, 395 (5th Cir.1991) (court of appeals will not consider evidence that is not part of the record on appeal and therefore "not considered by the district court"). As Waugh has submitted no other evidence to contradict the IRS' evidence, the court concludes that he has not demonstrated a genuine issue of material fact whether the debt in question is dischargeable as a result of the return having been filed in 1987.

■ Waugh also asserts that the unsigned copy of the 1986 tax return was "filed" when it was mailed to the IRS by Mrs. Waugh in 1989. That copy of the return was indisputably received by the IRS, so the only question is whether the lack of signatures is critical. The bankruptcy code does not specify what conditions must be met in order to "file" a tax return. *See* 11 U.S.C. § 523(a)(1)(B). Absent guidance from the bankruptcy code, the court concludes that whether a return has been filed should be determined by reference to the provisions of the Internal Revenue Code.

The parties cite opposing cases from other jurisdictions for their contentions as to whether an unsigned return may be considered "filed" for purposes of the bankruptcy code. *Compare In re Lee,* 186 B.R. 539, 541 (S.D.Fla.1995) ("unsigned return was not filed until receipt of the signed verification statement") *with In re Berard,* 181 B.R. 653, 654–56 (Bankr. M.D.Fla.1995) (Form 4549, Income Tax Examination Changes, *signed by taxpayers* constituted a filed return although not signed *under penalty of perjury*). *In re Berard* contains no indication that an *unsigned* return would have sufficed. *See, e.g., id.* at 654 ("Debtors signed documents purporting to fix Debtors' tax liabilities for the years at issue"), 656 ("Debtors, by signing the Form 4549, certainly waived valuable rights"). The court concludes that *In re Lee* is closer to the facts of this case than is *In re Berard.* The Fifth Circuit has also addressed the issue, although not in the context of bankruptcy, holding that an unsigned return is not "filed." *See Reaves v. Commissioner,* 295 F.2d 336, 338 (5th Cir.1961) (citing *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 50

---

**4.** *Compare Anderson v. United States,* 966 F.2d 487, 491 (9th Cir.1992) (proof of postmark by taxpayer's testimony that she saw postal employee stamp the document was sufficient); *Estate of Wood v. Commissioner,* 909 F.2d 1155, 1160–61 (8th Cir.1990) (proof of postmark by testimony of postal employee was sufficient); *In re Whelan,* 213 B.R. 310, 314–15 (Bankr.W.D.La.1997) (testimony by tax preparer that *he* mailed returns, with corroborating evidence, was sufficient but testimony by taxpayer/debtor that *he* mailed returns for other years was not); *In re Conner,* 187 B.R. 217, 219–20 (Bankr.E.D.Tenn.1995) (affidavits by taxpayer and tax preparer were sufficient when IRS provided no evidence supporting nonreceipt) *with Surowka v. United States,* 909 F.2d 148, 149 (6th Cir.1990) (when IRS had sent notices to taxpayers that return not received, taxpayers' deposition tes-

timony was insufficient, tangible evidence of mailing by certified or registered mail would be required); *In re Harper,* 153 B.R. 84, 85–86 (Bankr.N.D.Ga.1993) (testimony by taxpayers that they filed their returns was insufficient); *In re Clark,* 138 B.R. 579, 582–83 (Bankr.E.D.Ark.1991) (testimony by taxpayer as to date return mailed, absent proof of postmark, insufficient to overcome date that IRS recorded receipt); *In re Brookman,* 114 B.R. 769, 770 (Bankr.M.D.Fla.1990) (testimony by taxpayer, as opposed to tangible evidence contemplated by I.R.C. § 7502, was insufficient).

**5.** The affidavits in question were executed on May 31, 2000, over a year after the bankruptcy court's order.

S.Ct. 297, 74 L.Ed. 829 (1930)). The court concludes as a matter of law that an unsigned return is not "filed" for purposes of 11 U.S.C. § 523(a)(1)(B)(i). Accordingly, the court rejects Waugh's contention that his 1986 tax return was filed in 1989. Because the IRS has adequately demonstrated that no return for the 1986 tax year was filed by Waugh, either in 1987 or 1989, there is no genuine issue of material fact whether associated tax liabilities are exempt from discharge under the terms of 11 U.S.C. § 523(a)(1)(B)(i).

**B.** *Exemption for Taxes not Assessed but Assessable*

■ Even if the return *were* filed in 1987 or 1989, however, the tax liability would *still* be exempt from discharge under the terms of 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(iii). The Proofs of Claim filed by the IRS clearly indicate the liability as unassessed at that time, as confirmed by the assessment filed on August 17, 1998, after the order of discharge. Since the tax liability was clearly "not assessed before ... the commencement of the case," it is exempt from discharge if it was also "assessable ... after, the commencement of the case." 11 U.S.C. § 507(a)(8)(A)(iii).

Whether the liability was assessable after the commencement of the case (as well as when finally assessed) is determined by the Internal Revenue Code's provisions for when assessments can be made. Waugh's share of the Agri–Cal operating loss was initially a partnership item. *See* I.R.C. § 6231(a)(3). Accordingly, the normal period of limitations for assessments[6] does not apply. Instead, the period of limita-

tions comes from TEFRA provisions and is based on the filing of the Agri–Cal partnership information return, rather than the filing of the Waughs' joint return. The IRS generally must make such assessments within three years after the later of the date on which the partnership files its information return or the due date for filing the information return. I.R.C. § 6229(a). The period of limitations is suspended, not by a notice of deficiency to the individual partners, but by a FPAA mailed to the "tax matters partner." I.R.C. § 6229(d). The period of limitations is suspended by an FPAA until one year after the deadline for individual partners to file a petition contesting the FPAA, or if such a petition is filed, until one year after a final decision by the tax court. *Id.* A "tax matters partner" has 90 days to file such a petition, and other partners have 150 days to file a petition if the "tax matters partner" declines to do so. I.R.C. § 6226.

A partnership information return, *see* I.R.C. § 6031, is due on or before the fifteenth day of the fourth month following the close of the tax year. I.R.C. § 6072. Agri–Cal used a fiscal year ending November 30, rather than calendar year, for purposes of taxes. Its information return for the tax year ending November 30, 1986 (included in Waugh's 1986 tax return, *see* I.R.C. § 706(a)) was therefore due March 15, 1987 and the period of limitations for assessments on partnership items would have expired no earlier than March 15, 1990. The record on appeal shows that: 1) an FPAA was filed with the "tax matters partner" on March 14, 1990, therefore suspending the period of limitations; 2) a petition for readjustment was filed, by a

---

6. Generally, assessments must be made within three years after the later of the date the taxpayer files the return or the due date for filing the return. I.R.C. § 6501(a), (b)(1). The period of limitations is suspended by the

issuance of a statutory notice of deficiency, for the period during which an assessment is prohibited (for example, to allow the taxpayer to contest it, I.R.C. § 6213(a)) and for 60 days thereafter. I.R.C. § 6503(a)(1).

partner other than the tax matters partner, within the statutory deadline; and 3) the resulting case was still pending before the Tax Court as of October 8, 1998. Accordingly, any tax liability relating to the share of Agri–Cal's operating loss on the Waughs' 1986 tax return was still assessable as of August 15, 1996 when Waugh filed his bankruptcy petition. Since the assessment in question was not assessed before, but was assessable after, the commencement of the case, even if the return were "filed" in 1987 or 1989 and therefore not exempt from discharge under 11 U.S.C. § 523(a)(1)(B)(i), it would *still* be exempt from discharge, under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(iii).[7]

### C. *Timely Filing of Assessment*

■ In its brief, as well as the original cross-motion for summary judgment, the IRS also addresses the issue of whether the assessment in question was timely filed. It is not clear whether that issue is even before the court, but in any event the IRS' contention seems correct. Although the challenge to the FPAA was still pending at the Tax Court when the assessment was made, that no longer governed the time for filing the assessment in question. When Waugh filed for bankruptcy, his share of the Agri–Cal 1986 operating loss became a nonpartnership item.[8] The period of limitations for assessments relating to a partnership item which becomes a nonpartnership item is one year after the date on which the item became a nonpartnership item. I.R.C. § 6229(f)(1). The filing of a voluntary petition for bankruptcy results in an automatic stay of judicial and administrative proceedings to recover claims. 11 U.S.C. § 362. Because the IRS cannot make assessments during the automatic stay, the limitations period is suspended until 60 days after the automatic stay is lifted. I.R.C. § 6229(h).[9] Thus,

---

7. Waugh's total failure to respond to this argument by the IRS is puzzling, since it was raised not only in the IRS' appeal brief but also in the original motion for summary judgment.

8. A bankruptcy filing by one of the partners is one of the events which can convert a partnership item into a nonpartnership item (with respect to that partner). *See* Temp. Treas. Reg. § 301.6231(c)–7T(a).

> The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

The rationale for this regulation, authority for which is specifically granted by I.R.C. § 6231(c)(2), is apparently that the automatic bankruptcy stay could otherwise extend the statute of limitations for assessments for *other* partners.

9. The IRS brief seems to imply that the suspension of the limitations period due to the bankruptcy stay did not *begin* until some time after the notice of deficiency was filed, and thus the period between the bankruptcy filing and the issuance of the notice of deficiency counts against the one year limitations period of I.R.C. § 6229(f)(1). While the court acknowledges IRS expertise in this area, the IRS offers no support for this interpretation of § 6229(h) and it seems contrary to the plain language: "[T]he running of the period of limitations provided in this section with respect to such partner shall be suspended ... for the period during which the Secretary is prohibited by reason of such bankruptcy proceeding from making an assessment ...." Even if an assessment was otherwise prohibited, until the notice of deficiency were filed and the taxpayer given time to contest it, the bankruptcy proceeding *also* prohibited an assessment during that time.

The confusion may relate to the fact that § 6229(h) was *not enacted until August 5,*

the period of limitations for an assessment relating to nonpartnership items such as the Agri–Cal operating loss on the Waughs' 1986 tax return was suspended until 60 days after the termination of the bankruptcy stay, and would not expire until one year after that. The order of discharge was entered on December 23, 1997, and the assessment was made on August 17, 1998, well within the period of limitations.

## IV. *Conclusion*

For the above-stated reasons, the court concludes [10] that Waugh has not established the existence of a genuine issue of material fact with respect to the exemption from bankruptcy discharge of the assessment of tax liability for the 1986 tax year, and the IRS therefore is entitled to judgment as a matter of law. Accordingly, the court **affirms** the bankruptcy court's order granting summary judgment to the IRS.

1997, *after* Waugh had filed for bankruptcy. Taxpayer Relief Act of 1997, Pub.L. 105–34, 111 Stat. 788. The new provision, however, was explicitly made applicable to "partnership taxable years with respect to which the period under section 6229 ... for assessing tax has not expired on or before the date of the enactment of this Act." *Id.* § 1233(d), 111 Stat. at 1024. When the Taxpayer Relief Act of 1997 was enacted on August 5, 1997, the one year limitations period of I.R.C. § 6229(f) had not yet expired, regardless of any suspension due to the bankruptcy stay, since the bankruptcy petition was filed on August 15, 1996, less than one year earlier. This provision as to the effective date does not explicitly state that the *suspension* would be *retroactive* to the filing of the bankruptcy petition. The conference report, however, indicates "some uncertainty" whether the limitations period would be stayed anyway as a result of I.R.C. § 6503(h). H.R. Conf. Rep. No. 105–220, at 680–81, 1997 U.S.Code Cong.

& Ad.News at pp. 1491–92 (1997). Although the report states that the provision "does not purport to create any inference as to the proper interpretation of present law," it also says that the bill "*clarifies* that the statute of limitations is suspended for a partner who is named in a bankruptcy petition." *Id.* (emphasis added). Accordingly, the court concludes that the legislative intent was that, in circumstances such as these, I.R.C. § 6229(h) should be interpreted to have suspended the limitations period of § 6229(f) retroactive to the filing of the bankruptcy petition.

10. The court sympathizes with and adopts the pronouncement of the Fifth Circuit, faced with complex tax issues in *Cornelius v. Commissioner*, 494 F.2d 465, 472 (5th Cir.1974) ("Being mere mortals unendowed with cosmic tax wisdom, we have performed our task as well as our fallible mentalities and compositions will permit.").